CASE 68.—PROCEEDINGS BY L. COMINGOR, ASSIGNEE OF SIMONSON, WHITESON & CO., FOR A SETTLE-MENT OF THE ESTATE IN WHICH THE LOUIS-VILLE TRUST CO. FILED A CROSS-PETITION.— March 26.

## Comingor v. Louisville Trust Co.

Appeal from Jefferson Circuit Court; Chancery Branch (Second Division).

SAMUEL B. KIRBY, Judge.

From the judgment both parties appeal—Affirmed on the original and reversed on the cross appeal.

1. Assignments for the Benefit of Creditors—Management of Estate—Obligation of Assignee.—An assignee for the benefit of creditors or other trustee is bound, in the management of the estate, to exercise the same care that an ordinarily prudent person would use in his own affairs under like circumstances; and for losses occasioned by an affirmative or negative violation of this rule he is answerable.

2. Same—Misconduct of Assignee — Evidence—Sufficiency.—Evidence held to show that an assignee for the benefit of creditors was guilty of gross misconduct in the management of the estate, rendering him liable for the losses sustained.

3. Same—Compensation—Forfeiture.—Evidence held to show that

Comingor v. Louisville Trust Co.

an assignee for the benefit of creditors was guilty of gross misconduct in the management of the estate sufficient to warrant the court in refusing to allow him compensation for the services rendered as assignee.

4.  Trusts—Trustees—Compensation—Forfeiture.—A trustee guilty of fraud or misconduct in the management of the estate is not entitled to compensation.

5.  Jury—Right to Jury Trial — Constitutional Provisions.—The Constitution secures to a litigant the right of trial by jury only in cases where such right existed at common law, and, in proceedings to compel an assignee for the benefit of creditors, to settle his accounts, the assignee is not entitled to a trial by jury of the questions raised by the pleadings.

6.  Same.—Since the chancellor has exclusive jurisdiction of proceedings to compel an assignee for the benefit of creditors to settle his account, the chancellor has jurisdiction to decide, without the intervention of a jury, issues of fact involving the misconduct of the assignee in the management of the estate.

7   Bankruptcy—Trustee in Bankruptcy—Right to Maintain Proceedings.—Under Civ. Code Prac. section 21, allowing a trustee in bankruptcy to sue in his own name without joining the beneficiary, and Bankr. Act July 1, 1898, c. 541, section 47, 30 Stat. 557 (U. S. Comp. St. 1901, p. 3438), authorizing the trustee to collect under the direction of the court the property of the estate, etc., a trustee in bankruptcy may, pursuant to the order of the federal court, compel the bankrupt's assignee for the benefit of the creditors to settle his account as assignee, and pay over the amount he has or should have in his hands belonging to the estate.

8.  Depositions—Admissibility in Evidence.—Under Ky. St. 1903, section 1008, providing that depositions in equitable actions shall be taken on interrogatories, unless the court shall otherwise provide by rule or by an order, a deposition of an assignor for the benefit of creditors taken in a suit by his trustee in bankruptcy to compel the assignee to render an account, after the filing of the answer, and not within 20 days from the service of summons, is not taken in the assignor's behalf, where he is not united in interset with the trustee, and is properly received in evidence.

9.  Bankruptcy—Suit by Trustee—Petition—Sufficiency.—A petition by a trustee in bankruptcy to compel the bankrupt's assignee for the benefit of creditors to settle his account, and to pay over the money he has or should have in his hands as such, is complete, without an allegation that payment of

Comingor v. Louisville Trust Co.

the claim sought to be recovered had been demanded of the assignee before suit, or that such demand had been accompanied by the statutory affidavit as to the absence of usury, etc.

10. Pleading—Defects—Waiver.—The failure of a trustee in bankruptcy, in a suit to compel the bankrupt's assignee for the benefit of creditors to settle his account and pay over the amount he has or should have in his hands as such, to comply with the statute as to affidavit purging his claim and demand, must be objected to before the interposition of a defense on the merits, by filing an affidavit showing that the preliminary proof and demand has not been made, and then asking for a rule to produce evidence of such compliance; and allowing the case to proceed to judgment operates as an estoppel against the right to complain of the failure.

ON REHEARING.

11. Trover and Conversion—Damages—Value.—Where a trustee in bankruptcy is entitled to recover the value of goods fraudulently sold by the assignee of the bankrupt for an insufficient amount, under an order of court allowing the sale, the proper basis of valuation is to fix the value as of the date of the sale at what the stock and fixtures in view of their condition at that time should reasonably be expected to bring at a forced sale, such as ordered, and not the amount which the goods brought when sold by the purchaser at retail, who added to the stock of goods and otherwise made them salable.

12. Costs—Apeal—Supersedeas—Damages—Reversal—Effect.—On an appeal from a money judgment which was superseded, judgment was affirmed on the original appeal, and reversed on the cross-appeal because for an insufficient amount. Held under section 764, Civ. Code Prac., providing that, upon the affirmance of an appeal from a money judgment, the collection of which has been superseded, 10 per cent. damages shall be awarded against appellant, that appellee was entitled to the 10 per cent. damages on the judgment superseded, though it was reversed on the cross-appeal.

ALFRED SELLIGMAN and W. M. SMITH for appellant.

We shall argue earnestly and confidently.

1. That the proceeding at every step is vitiated by errors of law, principal among which are:

Comingor v. Louisville Trust Co.

(a) The trustee in bankruptcy has no authority to maintain this action.

(b) The assignee settled his accounts before the referee in bankruptcy who alone had jurisdiction to require the same after adjudication in bankruptcy and all the functions of this old case were thereby exhausted.

(c) The action was improperly tried in a defunct equity suit instead of in an original proceeding at law.

(d) If, as contended by appellees, after the bankruptcy proceedings, this case was still alive for the settlement of any item of Comingor's accounts, not disposed of by the Referee in Bankruptcy, then nevertheless, the judgment fails because no claimant has filed herein a demand verified as required by law. (Kentucky Statutes, 90).

e) Petition against Comingor should have been dismissed because of the acts in which he was found remiss by the court were done in good faith on the advice of counsel.

2. The judgment is not supported by the evidence and is in fact contrary thereto.

GEO. WEISSINGER SMITH and TYLER BARNETT, for Trustee for Creditors.

POINTS AND AUTHORITIES.

1. A superseded money judgment upon which an order of supersedeas has been issued bears damages. (Civil Code, 757; O'Conner & McCulloch v. Henderson Bridge Co., 95 Ky., 633.)

2. Wade v. First National Bank, 11 Bush, 698, has no application and is distinguished.

3. The appellant is entitled to a judgment against the assignee on account of his fraudulent acts for the loss occasioned the creditors to the extent of $48,000 with interest from July 5, 1900, instead of $24,398.90.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

On December 5, 1898, the firm of Simonson, Whiteson & Co., composed of D. G. Simonson, I. Whiteson, and Leo Stern, conducting a mercantile business in the city of Louisville in a house known as the "Mammoth," made a deed of assignment to their bookkeeper, the appellant, L. Comingor, conveying him for

the benefit of their creditors the stock of merchandise and fixtures in the Mammoth store. The latter at once accepted the trust, executed bond with approved security, and duly qualified as such trustee, thereby undertaking to perform in a legal manner the duties required of him in that capacity. At the time of the assignment the cash value of merchandise owned by the firm of Simonson, Whiteson & Co., was between $100,000 and $138,000, the fixtures and electric plant in and connected with the store about $12,000, and there was due the firm in open accounts about $7,000. Probably it would not be overstating the mark to say that the total assets of the firm then approximated $150,000, and that its liabilities were nearly as great. Appellant immediately procured the appointment of appraisers to appraise the assigned property. The appraisers completed their work in four days, placing the value of the property at the sum of $71,656.56, which was much less than its actual value. Three days after the filing of the deed of assignment, appellant brought suit in equity to settle his accounts as assignee. Only a few of the firms' creditors were made parties to this action. One of the largest creditors, the Louisville Banking Company, though conducting business just across the street from the Mammoth store, was not made a party to the action. Summons was executed upon only the members of the firm in question, but later and by amended petition two other creditors were made parties and served with summons. On December 10, 1898, the assignee opened the store, and commenced the sale by retail of the assigned property. Later he filed two petitions to obtain advice of the court. By the first he asked permission to sell the stock of goods by retail. By the second he reported large sales at prices

above the values fixed by the appraisers, and averred that he still had on hand over $5,000 worth .of the assigned property. As a matter of fact, according to the weight of the evidence, the goods then on hand were reasonably worth as much as or more than $70,000. On January 25, 1899, appellant in another petition, then filed, again asked advice of the chancellor, and averred that there were only "remnants, odds, and ends" left of the stock, a sale of which as a whole would redound to the benefit of his assignors and their creditors. The order of sale was granted by the court, though none of the creditors, even those who were parties to the action, had notice of the request or order. The law firm of Kohn, Baird & Spindle, who represented a few creditors, not parties of record, had such notice, but did not concern themselves about it, as their clients but theretofore agreed with appellant and Simonson, Whiteson & Co. to accept 50 cents on the dollar in settlement of their demands.

The assignee thereupon caused to be inserted in small type and in an obscure column of the Louisville Evening Times, between a notice relating to false hair and another to false teeth, an abbreviated advertisement of the time and place of the sale to be made of the assigned merchandise and fixtures. The Times foreman was directed by the assignee to insert the advertisement without display. It appeared in the Times on Friday and Saturday, January 27 and 28, 1899, and the sale occurred on January 30th, which was Monday of the following week. As there was no issue of the Times on Sunday, the advertisement was published but two days, Friday and Saturday. The goods and fixtures sold were purchased by Henry Stern of New York at the price of $15,000. Henry

Stern is a brother of Leo. Stern, who was a member of the firm of Simonson, Whiteson & Co. at the time of the assignment to Comingor. Shortly before the sale the three members of the firm of Simonson, Whiteson & Co., made an agreement in regard thereto with Henry Stern, which was reduced to writing by their attorney, and signed by the parties several months later. That writing reads as follows: ''We have agreed to divide equally between us all that may be left out of the assets of Simonson, Whiteson and Co., and what we may save from the wreck after paying the indebtedness of said firm to D. L. Newborg & Son, and Stern, Falk & Co. Louisville Ky., June 14th, '99. D. G. Simonson. I. Whiteson. Leo Stern.'' Under the verbal agreement entered into before the sale, Henry Stern was to come to Louisville and bid for the stock and fixtures not less than $15,000, nor more than $20,000. On the day of the sale, and at the hour named in the advertisement, to wit, 10 o'clock a. m., Henry Stern was on hand pursuant to the agreement referred to, and at 10:30 o'clock the goods and fixtures were knocked down to him at the price of $15,000, which he at once paid to the assignee. The sale was consummated under unusual circumstances. The store was closed to the hour fixed for the sale, and neither at the time indicated, previous thereto, or during the sale was there any effort to attract the notice of the public either by the customary ringing of an auction bell, the hanging out of a red flag, distribution of handbills, or posting of a notice on the store door. While conducting the sale the auctioneer stood on the stairway leading from the first to the second floor of the store. In from five to twenty minutes after the auctioneer reached the store the sale was consummated. Though

all the time present, neither the assignors or assignee exhibited the goods, called attention to their quality or value, or did anything to encourage bidding. All the while the goods on the first floor remained covered, and those in the basement and on the second, third, and fourth floors were never shown the few persons, besides the parties in interest, present. The auctioneer did not have, nor had the assignee furnished him, an inventory of the property sold. There was no offer to sell the goods in lines or by lots, or to make a separate sale of the fixtures. But few persons were present, and Henry Stern was practically the only bidder. According to the testimony of some of the persons in attendance, one or two of the spectators would have made bids, but Whiteson deterred them from doing so by requesting them not to take away his bread and meat. One prospective bidder was threatened with a choking if he persisted in bidding, and yet another was given a note of several hundred dollars he was owing Simonson, Whiteson & Co., to keep him from bidding. On the day of the sale, and upon his paying the assignee the amount of his bid, Henry Stern took possession of the goods, and two days later placed them in possession of Leo Stern, Simonson and Whiteson, the first as manager, immediately following which Henry Stern returned to New York, where he has since remained. While in charge of the goods and business left with him by his brother Henry, Leo Stern replenished the stock to the amount of $15,-000, and during the six months of his management of the business he deposited in the German Bank of Louisville $82,138.16, realized from the sale of the goods his brother purchased of the assignee of Simonson, Whiteson & Co., and the $15,000 further stock, added thereto, under his (Leo Stern's) management of the

business. On February 1, 1899, or two days after the sale to Henry Stern of the goods and fixtures of Simonson, Whiteson & Co. by the assignee, the Louisville Banking Company, principal creditor of the firm, brought suit to set aside the sale of the property to Henry Stern, and to subject the same to the payment of the firm's debts, and shortly thereafter other creditors of the firm filed in the United. States District Court for the Western District of Kentucky a petition in involuntary bankruptcy against Simonson, Whiteson & Co. and each member of the firm, and the company and members thereof was later duly adjudged bankrupts. Following this adjudication, the referee in bankruptcy issued rules against Comingor, assignee of Simonson, Whiteson & Co. and his attorneys to show cause why the assignee should not pay to the trustee in bankruptcy $3,398.90, the amount claimed by the assignee as commissions, also $6,766.53, balance of the assets of the estate of his assignors admitted by him to be in his hands, and the further sum of $3,000 which he claimed to have paid as a fee to his attorneys. The rule being made absolute as to the $6,766.55, that sum was paid by the assignee into the federal court, but upon appeal to the Circuit Court of Appeals, and later to the Supreme Court, those tribunals reversed the judgment of the district court, upon the ground that the assignee had a right to have his accounts settled in the State court in which was still pending the action brought by him to obtain a settlement of his accounts. Louisville Trust Co. v. Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413.

Upon the conclusion of the litigation in the federal courts, the Louisville Trust Company, trustee in bankruptcy, by supplemental answer, cross-petition, and

counterclaim filed in the action in the Jefferson circuit court asked to enforce a settlement of Comingor's accounts as assignee of Simonson, Whiteson & Co., and to recover of him the amount he had or should have in his hands belonging to the estate of his assignors. The circuit court, being of opinion that the questions of law and fact raised by the pleadings could be determined by the court without the cost and delay arising from a reference to the commissioner, refused to order such reference. On the hearing, the court below rendered judgment in favor of the Louisville Trust Company, trustee in bankruptcy of Simonson, Whiteson & Co., against Comingor, assignee of the same firm, for $10,706, with 6 per cent. interest from July 5, 1900, upon the ground that his fraud or negligence caused a loss to the estate of that amount; and for the further sum of $3,398.90, with 6 per cent. interest from the 5th day of July, 1900; the sum last mentioned being the amount of commissions retained by him for services claimed to have been rendered as assignee, but which the court held he was not entitled to on the ground that his negligence caused a loss to the estate of his assignors to that amount, in addition to the larger sum first named. Comingor complains of the judgment, hence the appeal; and, as appellee Louisville Trust Company was claiming in its answer and counterclaim a much larger sum than was recovered, it took a cross-appeal because of the failure of the circuit court to give judgment in its favor for the full sum claimed.

We are of opinion that the evidence appearing in the record clearly shows that there was a fraudulent agreement, entered into before the public sale of January 30, 1899, between Simonson, Whiteson, and Leo Stern on the one part, and Henry Stern on the other,

pursuant to which the stock of assigned goods and fixtures of the former were to be sold to the latter at greatly less than their value, to wit, $15,000, or not exceeding $20,000, and that, after being purchased by Henry Stern, they were to be sold and the proceeds divided among Simonson, Whiteson, and Leo Stern, after paying the claims of the preferred creditors named in the writing subsequently drawn to evidence the agreement. Appellant's knowledge of the agreement and participation in the consequent fraud is, we think, also established by the evidence. His position as bookkeeper of Simonson, Whiteson & Co., necessarily made him familiar with their business, and rendered it practically impossible for them to execute the agreement in question without his knowledge and assistance. As the assignment was necessary to carry out the fraudulent agreement, it is most natural that the firm should have selected their bookkeeper and confidential friend to act as assignee, if, as the evidence in the record tends to show was the case, they knew he would further their purposes. One of his first acts as assignee was to put it out of the power of the appraisers to fairly value the property and assets that came to his hands, for he and his assignors so arranged and concealed the goods and fixtures and juggled inventories and price lists as to prevent a fair appraisement. The circumstances attending the advertisement and sale of the goods and fixtures to Henry Stern could not have been accidental, and would not have prevailed without appellant's assistance or connivance. No surer means could have been adopted to carry out the fraudulent scheme contemplated by his assignors and Henry Stern than those resorted to by appellant in procuring from the court, without notice to the creditors, and by a sup-

pression of the true facts in respect to the value of the goods, the order of sale, and the illegal manner. of advertising and conducting the sale. In the petition filed by appellant for "advice" and to obtain of the court the order of sale, he admitted phenomenal sales of the assigned goods, and represented that he still had in the store "over $5,000" worth of goods which he wished to sell as "remnants, odds, and ends." When the petition was filed, he knew that the goods, fixtures, and accounts then in the store amounted in value to not less than $70,000. In addition, it appears from the record that appellant's attorney who advised him in all matters connected with the assignment wrote the agreement in question. It further appears from the evidence that appellant did not file in the county court or clerk's office an inventory of the assigned estate, or schedule of the debts of his assignors. From all the evidence before us we cannot doubt appellant's knowledge of the fraudulent agreement, or his participation in its execution. If he did not know of the fraudulent agreement and the manner in which it was consummated, he was extraordinarily negligent, for the evidences thereof manifested themselves in his presence and in connection with his duties as assignee from the time of his appointment down to the beginning of this litigation in view of which his failure to detect it is inexplicable and unpardonable. In our opinion appellant should have realized a much larger sum from the sale of the goods and fixtures than he received.

Without adopting the estimate of any particular witness, we are satisfied that the great weight of the evidence is to the effect that the stock of goods sold by appellant to Henry Stern was at the time of the sale worth at cost prices not less than $50,000 and

the fixtures not less than $10,000, making the total value of goods and fixtures $60,000. Deduct from this amount 40 per cent., or $24,000, for depreciation in the value of the stock and fixtures, and the $15,000 received by appellant in the sale to Henry Stern, and there will be left $21,000 with which appellant is justly chargeable. In addition, he should be charged with $3,398.90, the commissions retained by him for services·rendered as assignee, making a total of $24,389.90, for which, with interest from July 5, 1900, appellee should have recovered judgment in the court below. No doctrine is better settled than that an assignee, or other trustee, in the management of the estate intrusted to him, is bound ·to exercise the same care that an ordinarily prudent person would use in his own affairs under like circumstances, and for such losses, deficiencies, or injuries as may be occasioned by his affirmative or negative violation of this rule, and the duties it imposes, he is answerable for the loss thereby inflicted. Perry on Trusts, section 770; Pom. Eq. Juris. section 1070. In Pomeroy's Equity Jurisprudence, section 1079, it is said: ''It might be supposed that the term 'breach of trust' was confined to wilful and fraudulent acts which have a quasi criminal character, even if they have not been made actual crimes by statute. The term has, however, a broader and more technical meaning. It is well settled that every violation by a trustee of a duty which equity lays upon him, whether wilful and fraudulent, or done through negligence, or arising through mere oversight or forgetfulness, is a breach of duty.'' Upon the facts furnished by the record before us, and under an application of the just rule above stated, appellant's management of the estate intrusted to him was highly reprehensible, and such as to manifest bad

faith and gross misconduct, which this court cannot ignore or condone, even to the extent of allowing him compensation for any part of the services he claims to have rendered as assignee. The circuit court's action in refusing him compensation was, therefore, proper, for a trustee guilty of fraud or misconduct in the management of the estate is not entitled to compensation. Perry on Trusts, section 919; 4 Cyc. 257.

We do not think appellant's contention that he should have had a trial by jury of the questions of fact raised by the pleadings, is tenable. The Constitution secures to a litigant the right of trial by jury only in cases where such right existed at common law. O'Connor, etc., v. Henderson Bridge Co., 95 Ky. 643, 16 Ky. Law Rep. 244, 27 S. W. 251, 983; Ford v. Ellis, 56 S. W. 512, 21 Ky. Law Rep. 1838; Carder v. Weisenburgh, 95 Ky. 138, 23 S. W. 964, 15 Ky. Law Rep. 497; Reese's Adm'r v. Youtsey, 113 Ky. 839, 69 S. W. 708, 24 Ky. Law Rep. 603. In view of expensive testimony having been taken by deposition in the case as prepared, it would have been an abuse of discretion on the part of the lower court to direct an issue out of chancery. Moreover, the action is not one on appellant's bond, but to settle his accounts as assignee. The issues of fact as to the questions of fraud and value were but incidental to the main purpose of the action, which was to compel an accounting and settlement of the assignee, and, the chancellor having exclusive jurisdiction thereof, such jurisdiction carried with it the power to decide all other issues raised, without the intervention of a jury.

Appellant's contention that appellee Louisville Trust Company, trustee in bankruptcy, has no right to assert in this action the claim in controversy, is without merit. Its right to do so was recognized by

the Supreme Court in the case of Louisville Trust
Company v. Comingor, 184 U. S. 184, 22 Sup. Ct.
293, 46 L. Ed. 413; and it would be an anomalous
change of base to permit appellant, after defeating
appellee in the federal courts upon the ground that
he has the right to settle his accounts as assignee in
the State court, to insist that appellee cannot assert
its right of action against him in the latter court,
where he forced it to go. Section 21, Civ. Code Prac.,
allows a trustee in bankruptcy to sue in his own name
without joining the beneficiary. Manifestly, if in this
case there should be a recovery against appellant, it
should be applied to the payment of the debts of Sim-
onson, Whiteson & Co.; and the trustee in bankruptcy,
as the representative of the firm's creditors, would
be and is entitled to receive it, for which reason it
had the right to enter its appearance in the action to
assert its rights. In addition, appellee was expressly
authorized by an order of the federal District Court
to sue and recover of appellant the claim herein liti-
gated, and section 47 of the bankruptcy act of 1898
(Act July 1, 1898, c. 541, 30 Stat. 557 [U. S. Comp.
St. 1901, p. 3438], made it its duty to do so.

Appellant has no just ground of complaint to the
action of the circuit court in overruling his exceptions
to the depositions of appellee. Under section 1008,
Ky. St., and rule 12 adopted by the Jefferson circuit
court, the depositions were properly taken upon in-
terrogatories. As Simonson's depositions seems to
have been taken after the filing of the answer, and not
within 20 days from the service of summons, and he
is not united in interest with appellee, and the depo-
sition was not taken in his own behalf, under the rule
in question it was properly admitted in evidence.

Appellant further complains that there does not

appear in the record the statutory affidavit purging appellee's claim. Obviously the objection comes too late. The cause of action stated by appellee's pleadings against appellant was complete without an allegation that payment of the claim sought to be recovered had been demanded of appellant before suit, or that such demand had been accompanied by the statutory affidavit as to the absence of usury, etc. Failure of the plaintiff to comply with the statutory requisition as to affidavit and demand must be objected to by the defendant before he interposes his defense on the merits of the case by filing an affidavit showing that the preliminary proof and demand had not been made by the plaintiff, and then asking a rule against him to produce evidence of his compliance with the necessary prerequisites. If such evidence be not produced in response to the rule, the court will dismiss the action. Thomas' Ex'r v. Thomas, 15 B. Mon. 182; Grough's Adm'r v. Alvey & Co., 10 Ky. Law Rep. 590; Rigney v. Peely's Adm'r, 13 Ky. Law Rep. 93; Cockrill v. Mize, 12 S. W. 1040, 11 Ky. Law Rep. 637; Rogers v. Mitchell's Ex'r, 1 Metc. 24; Lyon's Ex'r v. Logan County, 78 S. W. 454, 25 Ky. Law Rep. 1668. Appellant did not pursue the course above indicated, and, having allowed the case to proceed to judgment, he is estopped to complain of appellee's failure to comply with the statutory requisition of affidavit and demand.

For the reasons indicated the judgment is affirmed on the original, and reversed on the cross, appeal, and cause remanded, with directions to the lower court to enter judgment in appellee's behalf against appellant for $24,398.90, with interest from July 5, 1900; and for further proceedings consistent with this opinion.

On Rehearing.

Appellee's petition for modification and extension of opinion herein insists that this court on the cross-appeal should, in reversing the judgment of the circuit court, have directed the entering in that court of a judgment in its behalf against appellant for $48,000, instead of the amount named in the opinion. We have concluded to adhere to the conclusion expressed in the opinion. Appellee's contention on this point is based on the amount realized for the stock of Simonson, Whiteson & Co., after its purchase by Henry Stern under the fraudulent arrangement with them. This is not a fair criterion, as the sum thus realized for the goods was obtained by disposing of them in the usual course of trade, and by making such additions to the stock as would enable them to be sold to the best advantage. A fairer basis of valuation was that adopted by the opinion which fixed the value as of the date of sale at what the stock and fixtures, in view of their condition at that time, should reasonably be expected to bring at a forced sale, such as was ordered. The valuation thus made should stand, as we have not been convinced by anything said in the petition that it was not approximately correct.

It is further insisted by appellee that the affirmance of the judgment on the original appeal entitled it under section 764, Civ. Code Prac., to 10 per cent. damages on the amount thereof. In this we concur. The section, supra, seems to give damages upon an affirmance, as a matter of right in money judgments to the extent that they have been superseded for the purpose of appeal. On this appeal, prosecuted by appellant, Comingor, the judgment of the circuit court which he superseded was affirmed. The effect of

which was that the judgment was proper as far as it went. The appeal and supersedeas prevented appellee from taking out an execution on the judgment pending the appeal. The affirmance of that judgment in view of its having been superseded entitled appellee to 10 per cent. damages upon the amount thereof, and the right to such damages is not affected by the additional or increased amount to which appellees will be entitled upon the return of the case to the lower court by reason of the reversal of the same judgment upon their cross-appeal.

The case of O'Connor v. Henderson Bridge Company, 95 Ky. 633, 16 Ky. Law Rep. 244, 27 S. W. 251, 983, and Henderson Bridge Company v. O'Connor & McCulloch, Id., is in point. O'Connor and McCulloch were original appellants and the Henderson Bridge Company cross-appellant. In response to the petition for rehearing, filed by the Henderson Bridge Company, the court said: "Section 757, Civ. Code Prac., as amended March 24, 1888, provided: 'When a party recovers judgment for only part of the demand or property he sued for, the enforcement of such judgment shall not prevent him from prosecuting an appeal therefrom as to so much of the demand or property sued for that he did not recover.' " So that the contractors were entitled to an execution upon the judgment of the lower court for $61,536.55 at the same time prosecuting an appeal therefrom as to so much of the demand sued for that they did not recover, but the company prevented them obtaining an execution and thereby collecting the amount of the judgment by a separate appeal and execution of the supersedeas bond, whereby it covenanted to pay to the contractors, appellees, all costs and damages adjudged against appellants on that appeal, and also

satisfy the judgment appealed from, if affirmed. The decision of this court was that on the appeal of the contractors they did not recover all the demand sued for they are entitled to, and that the judgment pro tanto be reversed. But upon the appeal of the company the judgment had to be necessarily affirmed, because it was not erroneous to its prejudice. And, as a consequence, under section 764, 10 per cent. damages on amount of the judgment superseded had to be awarded.

The petition of appellee as to the claim for 10 per cent. damages is sustained, and the damages allowed. In other respects it is overruled.