MYRON W. WHITTEMORE, Appellant, *vs.* WILLIAM COLE-
MAN *et al.* Appellees.

*Opinion filed April 23, 1909.*

1. EXECUTORS AND ADMINISTRATORS—*appeal must be treated sep-
arately as to each item of report.* An appeal by an administrator
from an order sustaining exceptions to certain items of his final re-
port must be treated separately as to each item, and no other part
of the account is involved.

2. SAME—*when administrator is not entitled to credit as guard-
ian.* An administrator is not entitled to credit in his final report
for an amount claimed to have been paid to himself as guardian
of an infant child of the intestate, where the child died at the age
of about four months, its heirs were the same as those of the in-
testate, and there is no proof of any amounts paid out on account
of such ward.

3. SAME—*allowance of a claim by county court not conclusive.*
The allowance by the county court of a claim against an estate is
not conclusive against an heir excepting to the administrator's final
report if such allowance is subject to impeachment for fraud or
collusion in a court of equity.

4. SAME—*county court may set aside previous orders on hear-
ing exceptions to final report.* The county or probate court, in ad-
justing the final accounts of administrators and guardians, may
exercise the powers of a court of equity, and may review, set aside
or modify previous judgments allowing claims against the estate
and require the final report to be surcharged with all items im-
properly allowed by previous orders.

5. SAME—*when administrator is not entitled to credit for pay-
ing allowed claim.* An administrator is not entitled, against excep-
tion, to credit in his final report for the amount paid by him on a
claim allowed against the estate by a previous order, where it ap-
pears the administrator colluded with the claimant in raising the
amount of the claim from $100 to more than $1000, and induced the
court to allow the claim without evidence, upon his representation
that it had been investigated by him and was just.

6. SAME—*when administrator is not entitled to compensation.*
Compensation is allowed to administrators and guardians for ser-
vices performed and not· for neglect of their duties, and if their
conduct shows flagrant disregard of duty they are not entitled to
compensation.

7. SAME—*when item for attorney's fees is not allowable.* An item for an amount paid by an administrator to a certain person as attorney's fees cannot be sustained where the evidence is that the administrator was an attorney and attended to the legal business himself, and there is no proof that he employed the person named in the report, or any other attorney, in connection with the settlement of the estate.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

W. H. RICHARDSON, for appellant.

WILLIAMS, LAWRENCE, WELSH & GREEN, ASHCRAFT & ASHCRAFT, and ANDREW L. WINTERS, (J. D. WELSH, and RAYMOND M. ASHCRAFT, of counsel,) for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

On June 30, 1898, Nellie German died leaving an estate valued at about $8000. Myron W. Whittemore was by the probate court of Cook county appointed administrator of the estate. On May 14, 1898, Nellie German became the mother of an illegitimate child, Myrtle German, who survived her mother, and appellant was appointed guardian for the infant child, Myrtle German. Nellie German was an adopted daughter of John E. and Betsy E. German, and the estate which she left came to her by descent from her adoptive parents. Myrtle, the only surviving child of Nellie German, died September 22, 1898, at the age of four months and eight days. After the death of the child, Myrtle, Jennie Swick, mother of Nellie German and grandmother of Myrtle, set up a claim to the estate, which resulted in litigation that was finally terminated by the decision of this court reported as *Swick* v. *Coleman,* 218 Ill. 33, in which the decision was adverse to the claim of Jennie Swick.

Pending the determination of these conflicting claims the accounts of the administrator remained unsettled. On March 10, 1906, Myron W. Whittemore, as administrator, presented his complete and final account to the probate court of Cook county. Appellees, who were by the judgment of this court determined to be the legal heirs of Nellie German and also of Myrtle German, filed exceptions to such final report, which were sustained as to the following items, for which the probate court refused credit to the administrator: (1) $550 which the administrator claimed he had paid himself as guardian of Myrtle German, the same having been transferred to his guardian account as a child's award; (2) $1078.13 paid to Jennie Swick on a claim allowed against the estate; (3) $600 paid to Arthur W. Fulton, attorney fees for legal services rendered in the settlement of said estate; (4) $568 retained by the administrator as compensation for his services. From the judgment of the probate court sustaining exceptions to these several items the administrator appealed to the circuit court, where, upon a hearing *de novo,* said exceptions were again sustained and a decree rendered ordering the administrator to surcharge his report with these several items. The administrator has appealed to this court from a judgment of the Appellate Court affirming the decree of the circuit court, and insists (1) that the circuit court erred in refusing credit for these several items; (2) that the judgment of the probate court allowing the claim of Jennie Swick, and the order requiring appellant to pay the same, justified appellant in the payment of that claim without reference to its· merits; and (3) that appellees were guilty of such *laches* in presenting their exceptions as to bar the relief granted.

This appeal must be treated separately as to each item. (*Millard* v. *Harris,* 119 Ill. 185.) No other part of the account is involved. *Peterman* v. *United States Rubber Co.* 221 Ill. 581.

In regard to the $550 which appellant claims he paid to himself as guardian for Myrtle German but little need be said. As already shown, appellant's ward only survived her mother a few weeks. We find no evidence in the record of any award having been set apart for this child during its lifetime. On May 29, 1899, appellant seems to have credited himself with this item of $550 as administrator, which is all that the record shows in regard to such award. This entry was made some eight months after the death of Myrtle German. The death of the ward put an end to appellant's guardianship. Such relation could only be regarded as continuing for the purpose of making a final settlement of the guardian's account. The ward in this case could have had no contract liabilities, and her heirs being the same persons who were the heirs of her mother, we see no reason why appellant should have charged his account as guardian with receipt of this money, unless it was for the purpose of enabling him to charge additional compensation. The court below held that appellant was not entitled to credit for this item and ordered the report surcharged with the same, less any payments on account of said ward which appellant had made. Appellant having failed to disclose what amounts, if any, he had disbursed on account of his said ward, the court ordered that appellant's account be surcharged with the whole amount of said item. In our opinion there was no error in thus disposing of the first item involved in this appeal.

The second item of $1078.13 was disbursed by appellant to Jennie Swick upon a claim filed by her, allowed and ordered paid by the probate court. In regard to this item the evidence shows that after the death of Nellie German Mrs. Swick took the infant, Myrtle, to her home and cared for her until the child died; that the child was ill all the time that it was under its grandmother's care; that Dr. Gibbs was the physician who treated the child until its death; that some time in July or August, 1898, Dr. Gibbs came to

Mrs. Swick's home accompanied by appellant. Appellant
is a lawyer, and in the interview between the doctor and
lawyer and Mrs. Swick it was agreed that Mr. Whittemore
should be appointed administrator of Nellie German's es-
tate. Whittemore the lawyer and Gibbs the doctor were
apparently quite intimate friends. The interview resulted
in Mr. Whittemore being appointed administrator of Nellie
German's estate and guardian for Myrtle German. Cath-
erine Gibbs testifies that she heard a conversation between
Dr. Gibbs and Mr. Whittemore in relation to the estate of
Nellie German. She testifies that in this conversation Mr.
Whittemore said that he thought they could get a flat-
building for $25 for Mrs. Swick to live in, and that after
all the claims were paid and the estate settled, Dr. Gibbs
and Mr. Whittemore would divide up the remainder of the
estate as a "rake off" or "drag off," as they called it. The
evidence further shows that Mrs. Swick presented a claim
for something less than $100, covering all of the matters
that she claimed against Nellie German's estate and for her
care of the infant, Myrtle. In regard to this first claim
Mrs. Swick testifies: "The claim I presented in the first
instance was about $100 or less than $100; I guess I gave
that claim to Mr. Whittemore in his office; I don't remem-
ber; I could not say how long after the death of Nellie."
The evidence further shows that Whittemore suggested
that Mrs. Swick's claim was too small,—that she ought to
have had more. After the interview between Whittemore
and Mrs. Swick another claim was made out in her favor,
aggregating $1078.13. This claim was made out, in the
first instance, by Whittemore. Dr. Gibbs was present at the
time Mrs. Swick presented her first claim, and he suggested
that he thought Mrs. Swick ought to have an amount some-
where in the neighborhood of $1000. When this claim was
presented for allowance in the probate court appellant en-
dorsed his written consent to the allowance of the claim
and told the court that he had investigated the claim and

that it was all right, and thereupon it was allowed in full, without any evidence being offered by the claimant. The evidence wholly fails to show that this claim was just. On the contrary, we are forcibly impressed that the appellant actively aided and assisted Jennie Swick in presenting a fraudulent claim and falsely and fraudulently induced the probate court to allow the same, and was guilty of such gross dereliction of duty in respect to the trust reposed in him that he should be required to surcharge his account with the amount thus paid upon this fraudulent claim.

Appellant insists that the court erred in sustaining the exception to the item of $600 alleged to have been paid to Arthur W. Fulton as attorney fees. There is not the slightest evidence in this whole record that appellant ever employed Arthur W. Fulton, or any other attorney, in connection with the settlement of this estate. There is no pretense that Mr. Fulton, or any attorney other than Whittemore, rendered any legal services to appellant as administrator. The evidence is that appellant, being a lawyer, attended to this business himself.

The next item involved in this appeal is $568 retained by appellant for his compensation. This item was not allowed. In *Bond* v. *Lockwood*, 33 Ill. 212, this court held that compensation to guardians should be allowed for services rendered and not for the neglect of their duties. We think the same rule should apply to administrators. Appellant's conduct in connection with the administration of this estate shows such a flagrant disregard of duty that to allow him compensation would be to disregard the plain rules of law and shock that sense of natural justice that dwells in the breast of every honest man.

Appellant next contends that the allowance by the probate court of the Swick claim afforded legal justification for his paying the same. With this we are unable to agree. The rule established by the decisions of this court is, that the allowance of the claim by the county court is not con-

clusive against the heir excepting to the administrator's final report when such allowance is subject to impeachment for fraud or collusion in a court of equity. (*In re Corrington*, 124 Ill. 363; *Shepard* v. *Speer*, 140 id. 238; *Ward* v. *Durham*, 134 id. 195; *Schlink* v. *Maxton*, 153 id. 447; *Marshall* v. *Coleman*, 187 id. 556.) A county or probate court, in adjusting the accounts of administrators and guardians on final settlement, may properly exercise all the powers of a court of equity, and may review, set aside or modify previous judgments allowing claims against the estate and require the final report to be surcharged with all matters improperly allowed by previous orders. *Marshall* v. *Coleman, supra.*

Appellant finally contends that appellees are guilty of *laches* in bringing forward their exceptions to the items. This contention cannot be sustained. The exceptions were filed and heard within a month after the presentation of appellant's final report. It further appears from the record that on April 27, 1901, appellees served notice upon appellant not to make any payments or distributions of any part of said estate, and also notice that said heirs of Nellie German would at the earliest opportunity object to the allowance of any claims against said estate, and would ask the court to set aside the claims already allowed and for a new hearing thereof. Appellant has no just grounds to complain that this matter was not brought to a hearing earlier. The decision of this court settling the rights of appellees in this estate did not become final until December 6, 1905. On March 10, 1906, appellant presented his final report. Exceptions were then duly filed and heard in the probate court before April 10, 1906.

There is no error in this record. The judgment of the Appellate Court for the First District is affirmed.

*Judgment affirmed.*