# IN RE ESTATE OF GEORGE MARCHILDON.[1]

January 20, 1933.

No. 29,206.

[1]Reported in 246 N. W. 676.

*Victor E. Essling* and *Edward W. Peterson,* for appellant.
*Boughton & Boughton,* for Gilbert Marchildon, respondent.

WILSON, CHIEF JUSTICE.

Appellant, an heir in the estate of George Marchildon, deceased, appealed from a judgment entered pursuant to an order allowing the final account of Gilbert Marchildon, former executor of the will of decedent. His motion for amended findings was denied before the judgment was entered.

George Marchildon, the testator, died in 1914 testate. Respondent, a son, was named executor. Decedent's wife died in 1915. The children then were to share equally in the estate. The will provided that respondent should file an account annually. Respondent qualified as executor on November 7, 1914. He filed an annual account in 1916. Thereafter he failed to file any annual account though he had been requested by the probate court and the heirs so to do.

He knew that the terms of the will required such. He kept no books, destroyed the checks by which he disbursed money, and was pitifully careless and inconsiderate in relation to the financial interests of the heirs.

The principal part of the estate consisted of a 360-acre farm near the town in which he and decedent's family lived. It was occupied by Fiedime Gregoire as a tenant for 11 years of respondent's administration. Respondent ceased to be such representative in 1928 under pressure from the heirs for an accounting. He then filed a final account, wherein he showed receipts, during the period of 14 years in which he was acting as representative of the estate, in the sum of $38,535.28. From an order of the probate court allowing his final account with some modifications, the appellant appealed to the district court, which also allowed the account with further modifications, and pursuant thereto the judgment from which this appeal was taken was entered.

■ The will provided:

"And it is my will and I do hereby direct that my executor, hereinafter named, shall handle my estate in his own way, but for the best interest of all of my heirs."

We read this language as an expression of confidence in the son named as the executor, but at the same time restricting "his own way" to "the best interest of all of my heirs." Certainly this language was never intended by the testator as a license to plunder. We construe the language to be such that it did not add to or detract from the duties and responsibilities imposed by law upon the executor. See 11 R. C. L. p. 146, § 154; Pabst v. Goodrich, 133 Wis. 43, 113 N. W. 398, 14 Ann. Cas. 824; King v. Talbot, 40 N. Y. 76; In re McDowell, 163 N. Y. S. 164; Kimball v. Reding, 31 N. H. 352, 64 Am. D. 333. These authorities also indicate that such language cannot be construed as authorizing the investment of trust funds, such as hereinafter discussed, contrary to the usual controlling rule of law.

■ The account as allowed included an item of $10,744.50 for "maintenance of family of decedent and schooling of minors." Appellant now attacks the allowance of this item in part only. Our attention is directed to certain items: Insurance for minor children, $503; automobile purchased and used by family and the representative, $1,000; garage bills, $166.30 and $122.59; doctor bills for two heirs, not minors, $335, including railroad fare, some traveling expenses of the representative. Perhaps some of these items were not technically for the benefit of the estate. The record is not clear. But they are family matters. As to such the rules of law are not inflexible, and, all things considered, it cannot be said that the car was unnecessary. We are of the opinion that upon the record before us we cannot say that it was error to allow any of these items.

■ Respondent made a charge in his final account for services in the sum of $12,873.18. The probate court allowed this item in the sum of $8,381.52. The district court allowed this item in the sum of $6,850.

Respondent in his administration of said estate was guilty of wil-, ful default, misconduct, and gross negligence. The court made one finding to the effect that the supposed balance on hand in the sum of $4,763.89 after the allowance of the account as modified had been used by respondent. In fact the record shows that he had wrongfully converted much more of the estate to his own use. It seems clear that he has on hand little, if any, of the money which he now rightfully owes the estate. Indeed, he rather blandly discloses his misappropriations of the trust funds in his hands, offering no excuse or justification. To compensate one for such flagrant disregard of duty would be in disregard of what is just. The trustee here did more than fail to keep accurate records. He seems to have had no appreciation of his moral and legal duties and responsibilities.

Under such circumstances a representative is not entitled to compensation. Reason for compensation is to repay one for time, labor, and the responsibility involved and to award him for the fidelity with which he discharges his trust. 24 C. J. 974. If the representative is unfaithful to his trust, as here, and fails in his fidelity, as here, he forfeits the right to compensation. St. Paul Tr. Co. v. Kittson, 62 Minn. 408, 65 N. W. 74; Davis v. Swedish-Am. Nat. Bank, 78 Minn. 408, 80 N. W. 953, 81 N. W. 210, 79 A. S. R. 400; In re Will of Rosenfeldt, 185 Minn. 425, 241 N. W. 573; 24 C. J. 997; 26 R. C. L. p. 1393, § 259; 3 Alexander, Commentaries on Wills, p. 2431, § 1594; McIntire v. Mower, 204 Mass. 233, 90 N. E. 567; Whittemore v. Coleman, 239 Ill. 450, 88 N. E. 228; Clark v. Clark, 87 N. J. Eq. 504, 101 A. 300; Comingor v. Louisville Tr. Co. 128 Ky. 697, 108 S. W. 950, 111 S. W. 681, 129 A. S. R. 322. Compensation is due to him who serves, not to him who destroys. It was error to allow respondent any compensation.

The court also allowed the respondent credit for $1,200 with which he bought ten shares of stock in a bank which later failed; and also $3,000 which he loaned to one Quesnell, taking therefor an unsecured note which proved worthless.

Respondent took the ten shares of stock in his own name as trustee. He became a director in the bank on the ownership of this

stock. We need not discuss the matter from the standpoint of who actually owned the stock before it faded away.

The representative bought the bank stock and loaned the money without authority from or the approval of the probate court. This he should not have done. He was an officer of that court. He was without authority to loan money or so to invest the funds of the estate. His duty was to settle the estate and make distribution without delay. Sometimes there may be special circumstances making it desirable to loan money or invest funds, but not here. Whether they exist is for the probate court to decide, not the representative. When a representative of an estate disregards the rules of law that are to control him, he takes all risk. We have no statute in this state expressly defining the securities in which a representative may be authorized by the probate court to invest; but a safe course would be to confine any such investments required or deemed advisable under special circumstances to such authorized securities as are named in G. S. 1923, § 7714, as amended, 2 Mason, 1927, id. Extreme care does no mischief. A representative of an estate has no general or implied authority to invest or loan money of the estate, and he is directly responsible to the estate for money which he assumes to invest or loan without authority from the probate court. Dunnell, Minn. Pr. L. § 750. He should invest or loan such funds only under authority from the probate court. It follows that respondent's account should be surcharged with said items of $1,200 and $3,000, and the stock and note must be considered as his property and not assets of the estate.

The judgment is reversed with directions to enter judgment in accordance with the views herein expressed.

Reversed.