WILLIAM S. LINDERMAN, EXECUTOR ESTATE OF MARY M. BINDLEY, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58871. Promulgated May 16, 1933.

*Maynard Teall, Esq.,* for the petitioner.
*John H. Pigg, Esq.,* for the respondent.

116

Reports of Cases 116.

OPINION.

Van Fossan: There is but one issue in this proceeding; i.e., whether or not certain. expenses incurred during the lifetime of decedent and aggregating $51,137.18 are deductible from the gross income of Mary M. Bindley for the period from January 1 to November 13, 1929, inclusive. The deduction was disallowed because the expenses " were not paid during the (decedent's) lifetime " and because " each guardian's share of the commissions " was not " set aside on the records and charged to the decedent's account prior to her death."

In our opinion the respondent has failed to distinguish between the two capacities in which the guardians functioned; first, as Mary Bindley's guardians during her lifetime, her representatives, charged with the duty of conserving her estate and collecting the income thereof; and, second, as statutory guardians rendering an account of their stewardship.

A guardian or committee of an incompetent person is not a taxable person under the statute. He merely acts for and on behalf of his ward. The tax return is made in the ward's name. The title to the property in the possession of the guardian is in the ward. The guardian transacts all business in the ward's name and manages the estate for the ward's benefit.

On August 30, 1929, Mary Bindley was adjudicated a mentally incompetent person and by duly constituted authority her guardians took possession of her estate. She died on November 13, 1929, within the calendar year and hence the taxable period for computing the income tax on income received by her or by her guardians for her was January 1, 1929, to November 13, 1929.

When Mary Bindley died the relationship of guardian and ward was terminated. *Stobert* v. *Smith*, 184 Pa. 34; *Simpson* v. *Holmes*, 106 Ohio St. 437; *Norton* v. *Strong*, 1 Conn. 65; *State Fair Assn.* v. *Terry*, 74 Ark. 149; *In re Livermore's Estate*, 132 Cal. 99. Thereupon the guardians became merely custodians of the ward's property for the purpose of making a final accounting and settlement. *Whittemore* v. *Coleman*, 239 Ill. 450; *City of Anadarko* v. *McKee*, 89 Okla. 166. Thereafter the guardians could perform no affirmative acts as her representatives. Whatever books were kept by them reflecting their business transactions for the ward were theoretically closed at the date of her death. Subsequent entries were only memoranda indicating the nature and amount of the items entering into the preparation of the guardians' account to be rendered to the court. Furthermore, at her death the guardians immediately became debtors to the estate for the net balance of funds returnable to the estate and all book entries subsequently made were made in such capacity. *Bull* v. *Towson*, 4 Watts & Sargent, 557; *Crowell's Appeal*, 2 Watts (Pa.) 295. The amount of the ward's estate, passing to her executor, was the net amount in the hands of the guardians after deducting all proper expenses paid or incurred during the guardianship. It is not questioned in this case that the items in question, consisting principally of guardians' and attorneys' fees, were proper expenses.

The books kept by the guardians would seem to show that these expenses were paid subsequent to the ward's death. But under the reasoning of the above cases we deem this fact of book entry immaterial. It is stipulated by the parties that the expenses were incurred during the lifetime of the decedent. The payment related to the guardianship and the guardian fees accrued automatically as the guardianship progressed. They were a proper charge against the funds in the hands of the guardians. The funds that came into the

hands of the guardians were obviously more than sufficient to pay these items of expense. The amounts due on account of such items were determinable as of November 13, 1929, the date of the death of the ward and of the automatic termination of the active guardianship. By their very nature they attached to the income of the estate. By the same token they bore no relation to the estate in the hands of the executor, they were incurred prior to the death of the ward and the creation of the executorship. They never passed out of the hands of the guardians. The final accounting of the guardianship was as of the date of the death of the ward. Thereafter they could not encumber the estate. Such items belonged to the guardianship and in no sense were debts of the estate. *Appeal of Freeman*, 22 Weekly Notes of Cases 173. *A priori*, they could not be deducted by the estate as expenses and if not deducted from the income of the ward to which they adhered, deduction would never be permitted. Thus it may very properly be said that although the books bore entries of later date, so far as the ward was concerned these expenses were paid as of November 13, 1929, the date of her death. The assets of the ward which were charged with their payment were in the hands of the guardians on that date. Though we do not rest our decision solely on that ground, the least that can be said is that in the legal posture of the parties the expenses were constructively paid on or before November 13, 1929.

Section 41 of the Revenue Act of 1928 provides:

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; * * * or if the method employed does not clearly reflect the income, the computation shall be in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *

while section 43 of the same act provides:

The deductions and credits provided for in this title shall be taken for the taxable year in which "paid or accrued" or "paid or incurred", dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period.

Only by the treatment of the expenses of the guardianship as deductible from the gross income of the decedent during the guardianship can her net income be clearly or properly reflected. Such a treatment is expressly authorized by the statute and is correct in principle.

Reviewed by the Board.

*Decision will be entered for the petitioner.*

STERNHAGEN, ARUNDELL, MURDOCK, and LEECH dissent.