IN RE ESTATE OF MARY J. BAKER.
FRANCES REED AND OTHERS v. A. F. GOBLIRSCH.[1]

October 11, 1940.

No. 32,489.

[1]Reported in 294 N. W. 222.

*Evans & Evans,* for appellant.

*S. G. Bammer, Harry E. Coffie,* and *Hall & Catlin,* for respondents.

JULIUS J. OLSON, JUSTICE.

Defendant appeals from a judgment entered pursuant to findings made by the district court upon defendant's appeal from the final order of the probate court surcharging and settling his final account as administrator with the will annexed of the estate of Mary J. Baker, who died testate on May 2, 1931. She was the owner of a quarter section of land in Pipestone county of the appraised value of $6,400 subject to a mortgage of $650. She also owned a home in the village of Woodstock of the value of $2,000.

She left cash in the amount of $180, and ten shares of stock in a local elevator, valued at $250. The funeral expenses and that of her last illness amounted to a little over $400, and there were claims of creditors amounting to $196.79. As a consequence and for the purpose of paying all these items together with the expense of administration, defendant on January 25, 1932, was authorized to mortgage the farm in an amount not exceeding $1,850. Defendant procured a loan from one Bloom in the amount of $1,800, and, pursuant to the order of the court, executed a note and mortgage running over a period of three years from March 17, 1932, with an annual interest charge of five and one-half per cent. Upon receipt of the proceeds of the loan there was sufficient money in his hands to discharge all claims and expenses of administration. No reason is apparent why this was not done, nor was any given by defendant.

When the loan was made, so the mortgagee testified and the court found, defendant assured him that all taxes had been paid. Upon recording the mortgage Mr. Bloom discovered

that the 1930 taxes remained unpaid. He called defendant's attention thereto and was assured that they would be taken care of. But they were not paid; hence the mortgagee became disturbed about it, and in February, 1933, conferred with defendant, stating that if the administrator would pay either the taxes or interest he would not proceed with foreclosure, but also informing him that failure to do either would bring about foreclosure proceedings. Defendant did nothing, and as a consequence foreclosure followed because of defendant's failure to pay taxes and interest, which under the covenants of the mortgage he as representative mortgagor had bound himself to pay. Defendant had funds on hand with which to take care of both items. His excuse is that during the bank holiday in March, 1933, the money was tied up in the bank of which he was the managing officer, hence unavailable. At the foreclosure sale the property was bid in by the mortgagee.

During the redemption period defendant made no move to refinance the loan. Nothing was done until May, 1934, when two of the beneficiaries under the will, both nonresidents, made a trip to Pipestone to ascertain why the estate had not been closed. They retained their own attorney, who secured defendant's active assistance in bringing about the granting of an extension under the moratorium act. Under that order redemption was extended until March 1, 1935. During the intervening period defendant made no substantial efforts to refinance the loan, and, what is more, he failed to notify the other beneficiaries under the will that the mortgage had been foreclosed, well knowing that these were all nonresidents of the state. Defendant having wholly failed to make any redemption, one Meeker as the assignee of a judgment creditor of Mrs. Hilliard, one of the respondents, made such redemption as a creditor having a lien upon her undivided interest in the mortgaged property. All parties are now apparently agreed that the title to the property was wholly lost to the beneficiaries under Mrs.

Baker's will. It is interesting to note that the person so acquiring the property within a few days thereafter placed a loan on it for $2,500. The amount required for redemption, including taxes and interest, was $2,432.51.

The probate court surcharged defendant's account with the difference in value between what the farm was actually worth and the amount of the mortgage obligation with interest, taxes, and costs of foreclosure. Defendant appealed to the district court, where the same measure of damages was applied but resulted in a reduction of the surcharge from $4,600 to $3,866.26. It also refused to allow any compensation to the administrator, being of the view that his negligence had caused an inexcusable and substantial loss to the estate. The issues presented here relate solely to these items.

■ Under the provisions of 2 Mason Minn. St. 1927, § 8786:

"Every executor and administrator shall be entitled to the possession of all real and personal estate of the decedent which has not been set apart for the surviving spouse or children, *and shall be charged with all such property.* He shall receive the rents and profits of the real estate until the estate is settled, or until delivered over, by order of the probate court, to the heirs or devisees." (Italics supplied.)

The new probate code provides likewise, 3 Mason Minn. St. 1940 Supp. § 8992-89.

In conformity with the right so given, defendant took possession of all of decedent's property. Having asserted that right, the duty going with it necessarily followed.

■ An executor or administrator is a fiduciary, and so also is a trustee. While an executor's or administrator's duty is not, strictly speaking, a trust, yet both are fiduciaries by virtue of the office. There is obviously no distinction as to the liability attaching for failure to exercise that degree of care which is imposed upon all fiduciaries. In re Estate of Janke, 193 Minn. 201, 207, 258 N. W. 311. As said in

Harding v. Canfield, 73 Minn. 244, 246-247, 75 N. W. 1112, 1113, the test to be applied "is whether he honestly exercised in the premises that degree of care which men of common prudence ordinarily exercise in their own affairs." Of course he is not an insurer, but that does not relieve him from the duty of exercising the "highest degree of good faith * *· * in the execution of his trust." Minneapolis Trust Co. v. Menage, 73 Minn. 441, 448, 76 N. W. 195, 197. " 'Not honesty alone, but the punctilio of an honor the most sensitive,' is the standard of his behavior." Smith v. Tolversen, 190 Minn. 410, 413, 252 N. W. 423, 424.

■ The important question here, and the one most strongly urged by defendant, is whether the record sustains the court's findings that defendant was negligent in that he failed to exercise that degree of care which men of ordinary prudence apply in their own affairs under like circumstances. We have read the record with care and have arrived at the conclusion that the weight of the evidence sustains the court. That title was lost because thereof is apparent. So we have duty breached with resulting injury. That combination spells liability.

■ In respect to the court's justification for disallowance of compensation for the administrator's services, it is perhaps sufficient to say, as was said in In re Estate of Marchildon, 188 Minn. 38, 41, 246 N. W. 676, 677:

"Reason for compensation is to repay one for time, labor, and the responsibility involved and to award [reward] him for the fidelity with which he discharges his trust. * * * Compensation is due to him who serves, not to him who destroys" or negligently permits destruction.

Judgment affirmed.