EDWARD HANSON and Another v. ASLE SWENSON.

June 21, 1899.

Nos. 11,656—(178).

#### Guardian's Account—Laches of Wards.

Two wards failed for more than 15 years after they attained their majority to compel their guardian to render and settle his account, or turn over property alleged to be in his possession. The delay was not explained or excused. While these wards were of the respective ages of 16 and 19 years, and living with their mother as members of her family, their guardian, by oral order of the probate court, in good faith turned over to the mother all the property of the wards which he had in his hands as such guardian, supposing such act was a settlement of such guardianship matter. It did not appear what became of the fund so turned over, and nothing was done on the part of the guardian or wards as to the fund until 18 years thereafter. The wards, when they arrived at full age, and for 16 years thereafter, and presumably several years before they arrived at their majority, knew who was appointed their guardian, but did not have actual knowledge of the state of his accounts, although they might have ascertained the same by making inquiries therefor. The guardian, without admitting that there were any funds in his hands belonging to his wards, applied to the probate court for a settlement of his accounts 18 years after he turned the property over to the mother, when the wards appeared, and for the first time claimed that the guardian still had in his hands some of the property which he had so turned over to the mother. The wards were then more than 34 years old. *Held* that, irrespective of any statute of limitations, they were guilty of laches, and not entitled to enforce any claim for such fund against the guardian.

An order was made by the probate court for Houston county allowing the account of Asle Swenson, as guardian of Edward Hanson and others, minors, and the surviving wards appealed therefrom to the district court for said county. The matter was heard in the district court before Kingsley, J., who found in favor of respondent, and ordered judgment affirming the order of the probate court. From a judgment entered pursuant to the findings, appellants appealed. Affirmed.

*Duxbury & Duxbury,* for appellants.

*James O'Brien,* for respondent.

BUCK, J.

On January 28, 1868, Peter Hanson died intestate in the county of Houston, in this state, leaving, him surviving, a widow and four minor children. Two of these children died while minors, and their estate is not involved in this proceeding. Of the two surviving children, these appellants, one of them, Edward Hanson, was born September 16, 1861, and the other, Mary Carr, was born June 20, 1864. On December 4, 1871, the respondent, Asle Swenson, was duly appointed by the probate court of Houston county guardian of said minor children, and duly qualified, and entered upon the discharge of his duties, and at the same time he received as such guardian from the estate of Peter Hanson, deceased, the sum of $535 as the property of said minors, the same being their portion of the proceeds of the sale of certain land which had belonged to their father, Peter Hanson.

Thereafter Asle Swenson, as such guardian, filed certain accountings in said probate court, the last accounting having been so filed about March 16, 1880, at which accounting it appeared that he, as such guardian, had in his hands the sum of $212.19, consisting of a balance due on a promissory note originally given for $545, and bearing 7 per cent. interest per annum, made by one Swen Asleson and one Knute Halgrimson, the latter at that time being the husband of Kari, the widow of said Peter Hanson, and stepfather of said minor children, including the appellants. Immediately after said accounting, the said Asle Swenson, as such guardian, by oral direction of the said probate court, indorsed and delivered said promissory note to said Kari, the mother of said children; the said Asle Swenson then and ever since supposing that by said act he had completely and finally discharged his duty as such guardian of said children, who, from the time of his appointment as such guardian until the time of the said indorsement and delivery of said note, and until their removal from said county of Houston as hereinafter stated, lived continuously in, and were members of, the family of their mother and stepfather aforesaid. There was no testimony as to what became of the said note or proceeds, nor whether it was ever collected.

Shortly after the delivery of said note, the entire family removed

from Houston county to the county of Stevens, in this state, and no one ever made any claim or demand against said Asle Swenson for any money, unless the objections of these appellants to the allowance of his final account, made in probate court in 1898, amount to such claim or demand; and none of the parties supposed that Asle Swenson was liable to these appellants in any sum whatever until they were so advised by a third person, shortly before July, 1898, on which last-named day Asle Swenson appeared in said probate court of Houston county, and filed his account, charging himself as having in hand in March, 1880, said $212.19, with interest on the same until 1882, making a total of $227.04, and credited himself with fees as guardian from 1871 to 1882 at $10 per annum and $25 fees of probate, and $92.04 paid the mother of said minors as guardian by order of the probate court; thus balancing his account. It appears that the filing of this account was a voluntary act on his part, and was not done with any intention on his part of admitting that there was, or had been since 1880, any balance in his hands belonging to the appellants. The account so filed was allowed by the probate court, and it made its order therein in the following words:

"And it appearing that the said guardian has accounted for every part of the property of said minor received by him, and the accounts of said guardian having been settled and adjusted, and a summary statement of the same, as settled, allowed, and adjusted by this court, having been above and herewith recorded, on motion of said guardian, ordered that the said accounts be, and the same [are] settled and allowed as filed in and by this court."

From said order the appellants appealed to the district court upon the ground that no such payments were ever made.

The foregoing facts were found by the trial court, and it also found:

"That at the time of the removal of the appellants herein to said Stevens county, and ever since said time, they have known that the said Asle Swenson was appointed as their guardian by said probate court in 1871, but did not have actual knowledge of the state of his accounts, but might have ascertained the same by making inquiries therefor. And the court finds as matters of fact that their failure to call upon said respondent for an accounting at the time of their majority and since was without excuse, and

that by reason thereof they have been guilty of laches in that respect.

"As conclusions of law the court finds: First, that the appellants, having failed for more than fifteen years after attaining their majority, to demand said balance from said guardian, or to compel him, as their former guardian, to render and settle his accounts in probate court or otherwise, were guilty of such laches as to bar them of any and all remedy against the respondent on account of said balance due on said promissory note; second, that the order of the probate court from which this appeal was taken should be affirmed, with costs and disbursements. Let judgment be entered accordingly."

There is no settled case, no bill of exceptions, and the question raised is whether the conclusions of law are justified by the finding of facts.

The first error assigned, and the one which must necessarily be decisive of the case, relates to the court's conclusion of law that the appellants, having failed for more than 15 years after attaining their majority to demand said balance from the guardian, or to compel him, as their former guardian, to render and settle his accounts in probate court or otherwise, were guilty of such laches as to bar them of any and all remedy against the respondent on account of said balance on said promissory note.

In considering this question of laches, we must do so upon the assumption that there is not the slightest ground to charge him with any fraudulent act or intentional wrongdoing as guardian. If he erred in the performance of his duties as such guardian, it was not intentional; but under advice of the probate court, and under the evident belief that he was acting legally, and for the welfare of his wards. And we think that all parties, including mother, guardian, and the probate court, were of the opinion that the guardian was acting lawfully, and in good faith, in all matters pertaining to the property of the wards in the hands of the guardian. As a matter of fact, he did not retain in his hands any of the property which he had received as guardian, but paid the balance in his hands over to the mother of these appellants while they were living with her as members of her family, and they were then of the respective ages of 16 and 19 years, and we may properly assume that they knew who was their lawful guardian.

The law regards an infant of the age of 14 years as of sufficient age and discretion to choose his own guardian; and, when a guardian has been appointed by the court for a minor under the age of 14 years, the minor, at any time after he attains that age, may, unless such guardian is a testamentary guardian, appoint his own guardian, subject to the approval of the court. G. S. 1894, § 4538. The record shows that in 1874 this guardian had paid for the support of these wards $231.18; in 1875 and 1876, $181.75; in 1877, $80; and in 1880, $60,—total $552. It is true that these payments also went to the support, in part, of a minor sister of the appellants; but two-thirds presumably went to support these appellants, a considerable portion thereof having been applied to support them after they became 14 years old; and it is reasonable to presume that they then well knew who was their guardian, and that he had control of their funds. In 1880 they had actual knowledge that respondent was their lawful guardian.

On the hearing in probate and trial in district court in 1898, when they were many years past their majority, they did not claim but that they had received from their mother, by way of support or money, their share paid to her by their guardian, viz. $212.19. They did not deny, and it is conceded, that the mother received this amount from the guardian in 1880, and that it was the full balance in his hands as such guardian. It was in the power of appellants to have testified that they did not receive any of such fund, and no excuse is shown why they did not call the mother to show what became of this property, or to show by the stepfather that he had or had not paid it. If it is not paid, its collection is barred by the statute of limitations, through the negligence of the appellants, who, at least upon coming of age, could have secured possession of the note as their property, and, if not paid, could have enforced its collection, as the maker thereof is presumed to be solvent. The appellants do not explain or excuse this delay in seeking to charge the guardian with this sum of $212.19, nor why they do not ask their mother to explain what she did with it, or account for it, as they might easily have ascertained where the property was, or what had become of it. The delay of the guardian in not finally and legally accounting is easily explained and accounted for. The

mother was the natural guardian of the minor children, as the father was dead. Her interest in the welfare of her children would be natural. They lived with, and were cared for by, her. The probate court orally ordered the guardian to deliver the note to the mother, and, though mistaken as to the law, he in good faith delivered it to the mother.

The appellants remain silent for many years, when they should have spoken and acted, and now seek, by the technical aid of the law, to collect from the guardian property which the mother of the wards received, and which, upon all the facts of the case, was undoubtedly regarded by all the parties as a final settlement of a family matter, and which should not be disturbed upon any grounds appearing in the record. While this delivery of the note to the mother may not strictly be regarded as a repudiation by the guardian of his trust, it was evidently the full and sincere belief on his part that his trust was fully performed and ended, and that he was no longer liable, as he did not retain any of the trust funds in his hands, and the appellants never supposed that the guardian had any funds in his hands belonging to them until a third party so advised them shortly before July 9, 1898, and they then made no demand or claim upon him for any such fund other than objecting to the allowance of his account, by which accounting he evidently sought to have the record cleared up against him, and not to have a claim of nonpayment of the note hanging over him, for he made such accounting without any intent to admit that there was, or had been since 1880, any balance in his hands belonging to his wards. If the appellants had any claim against the guardian, they have slept upon their rights until the claim has become stale, and their failure to prosecute it within a proper and reasonable period renders them guilty of laches, and bars them from all remedy against the guardian on account of any alleged balance due on said promissory note. Brandes v. Carpenter, 68 Minn. 388, 71 N. W. 402; Taylor v. Whitney, 56 Minn. 386, 57 N. W. 937; Barnwell v. Barnwell, 2 Hill, Eq. 178.

Judgment affirmed.