[1] Reported in 297 N.W. 765.
His final account as special administrator of this estate having been surcharged in both probate and district courts, Mr. Leonard Eriksson appeals from the judgment.
The cyclone which on June 22, 1919, ravaged Fergus Falls and its vicinity was fatal to August Palm and his wife, Amelia Palm. (Mr. Eriksson became general administrator of her estate and a surcharge of his final account as such is dealt with in the companion case, In re Estate of Palm, 210 Minn. 87,297 N.W. 765.)
Mr. Palm was a building contractor. Death claimed him with two of his contracts but partially performed. One provided for construction of a schoolhouse at Gackle, North Dakota. The other was for the erection of a dormitory at the State Hospital for the Insane at Fergus Falls.
June 24, 1919, appellant was appointed and qualified as special administrator.[2] In that capacity he undertook completion of the two contracts and finished both. Not until June 19, 1923, did he attempt a final accounting as special administrator. He then filed his final account with the probate court. "Believe it or not," nothing further was done to have that account settled until July, *Page 79 
1937, when the Palm heirs filed objections. The probate court, and on appeal the district court, surcharged the account in respect to the several items now to be considered.
1. The determinative issues of fact have spotlights of legal standards which illuminate the path of consideration. In accounting by a fiduciary, the burden is on him to prove that his actions have conformed to the standard of his duty. Upon him and not upon the beneficiaries is the duty satisfactorily to explain. Corollary to that proposition, and first principle governing the conduct of a fiduciary, is his duty to keep dependable, distinct, and accurate accounts of his action as trustee. Smith v. Tolversen, 190 Minn. 410, 252 N.W. 423.
2. Because of the delay, although no one was so responsible for it as himself, appellant asserts that respondents are barred by laches (14 years of delay) from asserting the claims decided against him below. That we deny.
Upon appellant was the duty to account. That he recognized by filing a final account in 1923. He recognized it again in 1937 by an amended final account asserting errors in the first. So the issue is not, as it was in Hanson v. Swenson, 77 Minn. 70,79 N.W. 598, whether appellant should now make any accounting; it is rather and only whether his account as presented is correct. Hanson v. Swenson, 78 Minn. 18, 80 N.W. 833. It is said that where both parties are at fault in respect to delay "neither can assert laches as against the other; and where each of the parties seeks affirmative relief against the other in reference to the same transaction, neither may assert that the other was guilty of laches." 21 C. J. p. 216.
There are additional considerations of equity which should have warned appellant against reliance upon the supposed laches of his adversaries. Three of the Palm heirs were minors, the youngest not having attained her majority until 1932. In the meantime, appellant had been instrumental in having a guardian appointed for them. He became attorney for the guardian, a position plainly *Page 80 
incompatible under the circumstances with his duty as special administrator. He suggests that delay in procuring settlement of his account was due to long delay in appointment of a general administrator. There is no suggestion of good reason for such delay, and it is the plainest kind of reasonable inference that appellant himself, had he proceeded diligently, could have procured the appointment of a general administrator and a reasonably prompt settlement of his own account.
Upon the guardian was the duty to review with searching and critical vision the conduct of appellant as administrator. He seems not to have done so. Upon him also was the duty, in the interest of his wards, to insist upon the prompt appointment of a general administrator. Whether the guardian's dereliction was due to appellant's advice as his attorney is an unanswered question. Silence of the record on that point, without more, goes far to bar appellant's plea of laches. If attorneys will persist, inadvertently or otherwise, in representing such conflicting interests and, in consequence, are snared by results such as those which now entangle appellant, their own disregard of elementary standards of fiduciary and professional conduct will ordinarily be a proximate, if not sole, cause of their predicament.
When appellant filed his first account in 1923 he omitted to submit his vouchers. They were numerous and bulky but highly important. During the ensuing delay they have been lost because, according to appellant, they were carelessly stored and disappeared in moving his office. He offers no justification for their not having been filed with the probate court, where doubtless they would have been secure and now open to inspection. If, by the disappearance, appellant has been prejudiced, he has only himself to blame. At this point it should be said that the record discloses commendable diligence in the proceedings below to arrive at a just result notwithstanding the absence of underlying records.
Not only did appellant have the burden of proof below, but also it is now for him to show error in the judgment under review. *Page 81 
3. Proceeding to the fact issues, the decision of which we must review, we take up first one arising from the contract for the Gackle school building. Appellant's claim for a credit of $1,254.01 was disallowed. When Mr. Palm died there were outstanding against him the claims of certain laborers for work done on the Gackle job. It was necessary to pay those claims, and appellant paid them in the sum of $1,254.01.
One Albert Holmgren (since deceased) had been superintendent under Palm and continued in that capacity under appellant. Long afterward and on the basis of his then records, appellant submitted a detailed account thereof to the heirs or their representatives. It is respondents' exhibit 4 and cannot be construed otherwise than as an attempt to show in detailall the expenditures, from beginning to end of performance of the contract, covering the period both before and after Palm's death. Names of laborers and amount paid each, including an item for "miscellaneous labor" of $517.88, are set out. In like manner, it shows the expenses for materials, transportation charges, insurance, contractor's bond, and postage. It shows net gain on the contract, for which appellant is properly charged. In computing that item, so far as we can see, appellant took credit for all of his payments on account of labor, including those aggregating $1,254.01, for which he now wants what was held below to be a duplicating credit. The question is one of fact. The record discloses nothing to justify disturbance of the decision below on this item. In sum, it was but a refusal to credit appellant twice for the same outlay.
We cannot reverse the finding, implicit in the decision below, that when Holmgren accounted to appellant at the completion of the Gackle contract his statement covered the whole undertaking rather than only that part of it done after Palm's death. February 18, 1920, appellant gave Holmgren a final receipt discharging him "from further liability under said contract." It acknowledged receipt from Holmgren of "the amount due the estate as proceeds *Page 82 
of the contract price for the completion of the school building * * * as per report submitted and approved by" appellant.
Appellant's statement concerning the school job not only showed the net gain as $2,927.80, but also the "gain made by Palm before decease" as $536.99. This last item, the accrued profit before Palm's death, could not have been computed without charging for unpaid labor bills outstanding at Palm's death. It is therefore arguable against appellant that he did so include and thereby got credit for them.
In the same category for present purposes is an item of $1,648.44 which was advanced by a brother of the deceased to appellant to enable him to pay certain debts of the estate. It is true, as argued for respondents, that the payment of debts of the deceased is beyond the function of a special administrator. However, in a case such as this, if the estate has had the benefit, he should have credit notwithstanding. The decision below does give appellant credit for over $1,000 for disbursements from the sum in question. Record and argument fail to show appellant entitled to further credit.
We go now to issues arising from appellant's performance of the dormitory contract. He employed one Schueller to handle that undertaking as superintendent. The contract was performed at a loss fixed below at $3,586.10. Thereby were disallowed certain credits claimed by appellant.
One of them was for an item of $229.16 paid to Twin City Tile Marble Company. So far as we can see, that amount was paid as claimed. The account books of Schueller in evidence show its payment. There is no evidence to the contrary. So we hold that it was error to deny appellant credit for this item.
In this connection we are not overlooking any of the argument for respondents. Some of the entries read as though there had been a lawsuit with the Twin City Tile Marble Company. By so much, they are in error. But there was some controversy between Schueller and the marble company. Appellant assisted in *Page 83 
its settlement and was paid or credited by Schueller for his services. All that does not get us away from the fact, appearing from uncontradicted and credible evidence, that the sum was paid in cash October 1, 1919. It should have been credited accordingly.
When the Gackle schoolhouse was completed and Holmgren accounted therefor as superintendent, he reported as a residue of material on hand and "delivered at state hospital" an item of $50. All the evidence is that such material was delivered to and used on the dormitory job. The Gackle contract, on account of this item, was credited $50, by so much increasing the gain which was charged to appellant. So, as result of the Gackle contract, appellant was charged with this $50 item. He should have the offsetting credit because the stuff was used in the dormitory work. The decision below was in error in denying it.
Another credit claimed by appellant and disallowed was one of $1,760.22. The claim is that when the dormitory building was completed and after allowing Schueller credit for all other payments to him there remained owing him $1,760.22, for which appellant made settlement. There is no evidence that he paid that sum. In part his assertion is that he remitted some $700 of attorney's fees which Schueller was owing him and gave him a note for $500. Schueller's testimony is not clear; appellant's is not convincing. It is enough that as to this item appellant did not sustain the burden of proof resting upon him.
There is also a surcharge of $861.82, the amount of an advance which appellant claims to have made, from funds of the estate, to the guardian of the minor children. A special administrator has no general authority to make such an advance, and there was no order of the probate court permitting it. We assume, however, that if it had in fact been made we should now credit appellant accordingly. The finding that he did not make such an advance to the guardian, for maintenance of the minors or otherwise, is sustained by the record, a fact which nobody should know better than appellant himself. A controversy with respect to it arose in *Page 84 
the guardianship proceeding. Therein, appellant was attorney for the guardian. It was found that the guardian had not received the money and he was not charged therewith. There is nothing upon which we can reverse the finding on this item.
In the inventory appellant charged himself with $1,400 for certain building materials, miscellaneous tools, and equipment. The materials were used in erecting the dormitory. That work finished, appellant sold the tools and remaining materials for $300. The result was a loss, for accounting, of $1,100. He testifies that he interviewed various contractors and accepted the best offer he could get. There is no testimony to the contrary. Clearly, for the materials that went into the dormitory, appellant should have credit. While as special administrator he had no authority to sell chattels, it does not appear that the estate was prejudiced. We hold that appellant was entitled to credit for the $1,100 inventory loss (it was not all loss) which he claims.
4. A final point for appellant is supposed error in fixing his compensation as special administrator at $500, his claim being that it should be at least $1,150. It is enough for us to say, in affirming on this point, that, as nobody knows better than appellant himself, he was acting in a fiduciary capacity and under the duty of serving not only with perfect good faith but also with diligence. His compensation was reduced because of what was considered the "peculiar manner" in which he had performed his duty. The finding in this respect is aided by nothing of further explanation. But it is obvious that, if appellant has been guilty of nothing worse, he has been dilatory to a degree which defies satisfactory explanation, to say nothing of justification. In such case, a fiduciary, particularly if he be an attorney, is fortunate if a court allows him any compensation. There is abundant authority for its denial. In re Trusteeships Under Will of Drake, 195 Minn. 464,263 N.W. 439, 101 A.L.R. 801; In re Guardianship of Harty, 189 Minn. 66, 248 N.W. 329; In re Estate of Marchildon,188 Minn. 38, 246 N.W. 676. *Page 85 
5. One thing more requires comment. Rule VIII (2) of this court (200 Minn. xxix) goes far in permitting an appellant to save expense by abridging the record for printing. Appellant is here upon a shortened record which on the whole is commendable as to form and content but which yet exhibits one inexcusable fault concerning which we prefer not to remain silent. Portions of the settled case were omitted. The record as printed reads as though it reflects all testimony received. That is wrong. We welcome proper shortening of records. Wherever possible they should be abridged. But, as matter of frankness with court and fairness to opposing counsel, when there are omissions from the record they should be indicated with a sentence or two indicating what is missing and that it is considered irrelevant to the issues on appeal. Because of this impropriety on appellant's part, he will be denied statutory costs.
The result of our decision, tabulated, is this:
Surcharge by decision below . . . . . . . $4,567.78
 Deduction for items as to which we reverse: Twin City Tile Marble Company payment . $229.16
 Materials left over from Gackle schoolhouse contract and used in dormitory . . . . . 50.00
 Materials charged to appellant by inventory but thereafter used in dormitory building, and tools sold . . . . . . . . . . . 1,100.00 ---------
 1,379.16 ---------
Corrected Surcharge . . . . $3,188.62
The judgment must be modified by reducing the surcharge as to principal to $3,188.62. Interest will be computed and added. As so modified, the judgment is affirmed.
So ordered.
[2] Concerning the function of a special administrator, see 2 Mason Minn. St. 1927, § 8778, and 3 Dunnell, Minn. Dig. (2 ed. 1937 Supp.) §§ 3584 and 3584b. To what extent the proper functions of a special administrator were transgressed in this case, we have no occasion to inquire. *Page 86 
 UPON APPLICATION FOR REARGUMENT.
On April 25, 1941, the following opinion was filed: