## IN RE DISBARMENT OF LEONARD ERIKSSON.[1]

November 2, 1945.

No. 33,626.

*Magnus Wefald* and *R. B. Reavill,* for State Board of Law Examiners.

*N. F. Field, Roger L. Dell,* and *L. L. Drill,* for respondent.

[1]Reported in 20 N. W. (2d) 697.

PER CURIAM.

This is a disciplinary proceeding brought by petitioner, State Board of Law Examiners, against respondent, Leonard Eriksson, as an attorney at law of the state of Minnesota. The allegations of the petition were referred to the Honorable Arthur W. Selover, judge of the fourth judicial district, who heard the evidence at the district courthouse in the city of Fergus Falls and who made and reported findings of fact on December 26, 1944. The matter is here now for final determination pursuant to Supreme Court Rule XXI (212 Minn. xlvi).

The principal charges against respondent relate to his conduct (1) as special administrator of the estate of August Palm; (2) as general administrator of the estate of Amelia Palm; and (3) as attorney for the guardian of the minor children of August and Amelia Palm.

Respondent was 67 years old at the time of the hearing in December 1943. He was duly admitted to practice law in the state of Minnesota in 1905 and has resided and practiced his profession in Fergus Falls since August 22, 1905.

On June 22, 1919, August Palm, a building contractor, his wife, Amelia Palm, and one child of theirs were killed by a cyclone which struck Fergus Falls and the surrounding area on that date. August and Amelia Palm died intestate and left surviving them as their heirs at law four children: Elsie Palm, who had then just reached her majority, and Verna, August L., and Anna Vivian Palm, who were minors. At the time of his death, August Palm had two unfinished building contracts, one for a school at Gackle, North Dakota, and the other for a men's dormitory at the State Hospital at Fergus Falls. He left, in addition, certain real and personal property and certain insurance hereinafter more completely described.

On June 24, 1919, by probate court order, respondent became special administrator of the estate of August Palm, and on September 18, 1919, general administrator of the estate of Amelia Palm. On September 25, 1919, William A. Olson, brother of Amelia Palm, was appointed guardian of the Palm minor children.

Respondent acted as attorney for the guardian at the time of the filing of his petition and for some time subsequent thereto.

As special administrator of the estate of August Palm, respondent received authority from the probate court of Otter Tail county to complete both the Gackle school building and the men's dormitory at Fergus Falls. To do so, he entered into an agreement with Albert Holmgren on the Gackle school and with William M. Schueller on the Fergus Falls dormitory, both of said parties being experienced in construction work.

Respondent's examination of the two building contracts convinced him that, while the building at Gackle could be completed at a profit, a loss would likely be sustained on the men's dormitory at Fergus Falls. He conducted negotiations with the state seeking to have the August Palm estate relieved of its obligations under the latter contract. The state refused to release the estate, and in consequence respondent undertook to finance and complete both building projects. Under his direction, both buildings were ultimately completed. The contract at Gackle resulted in a profit to the estate, while that at Fergus Falls resulted in a loss.

On June 19, 1923, respondent filed his final account as special administrator of the August Palm estate. This account contained several substantial errors both as to receipts and disbursements. Respondent places the blame for this upon his bookkeeper, who made up the account from the records then available. This account was never brought on for hearing by respondent. Subsequent to its filing, Elsie Palm retained the services of another attorney, who petitioned the court for the appointment of a general administrator of the estate. A new general administrator was appointed but did not qualify, and respondent did nothing further to close his account or to obtain his discharge. On July 27, 1937, objections and exceptions to his final account were filed by Elsie Palm, who in the meantime had been appointed general administrator, through her present attorney, William P. Harrison of Duluth. Shortly thereafter, respondent, as special administrator, filed an amended final account. This was likewise objected

to, and the litigation resulting therefrom caused respondent's account to be surcharged by the court in the sum of $3,188.62, for which judgment was subsequently entered against him. See, In re Estate of Palm, 210 Minn. 77, 297 N. W. 765.

In the Amelia Palm estate, in which respondent acted as general administrator, his account was surcharged with the proceeds of a life insurance policy on the life of August Palm, which by its terms was made payable to his wife, Amelia Palm, and which contained a provision that, in the event Amelia Palm predeceased her husband, the proceeds of the policy should revert to the insured. The court held that the proceeds of this policy should have been paid into the Amelia Palm estate. Respondent, as special administrator of the estate of August Palm, had caused the proceeds of said policy to be paid into the August Palm estate and had used the proceeds in connection with completing the building contracts. As a result of this ruling, his account was surcharged in the sum of $2,021.52, the amount of the policy plus interest, less certain costs advanced by him in the Amelia Palm estate, and as a result judgment was entered against him accordingly. See, In re Estate of Palm, 210 Minn. 87, 297 N. W. 765.

In the guardianship proceedings, William A. Olson, the guardian, received from the state of Minnesota the sum of $4,700 appropriated by the state legislature to reimburse the Palm children for the loss sustained on the Fergus Falls dormitory contract. This sum he turned over to respondent, who retained $700 thereof as attorney's fees for procuring the appropriation, and caused the remainder to be invested in North Dakota real estate mortgages on property belonging to Nels Olson, father of the guardian, grandfather of the Palm children, and a client of respondent. No probate court order was obtained authorizing this investment. Respondent asserts that it was made upon instructions from the guardian. The real estate securing the mortgages was subsequently forfeited for taxes, and the mortgages became worthless. It is undisputed that respondent acted as attorney for the mortgagor,

Nels Olson, and charged him a fee of $100 for closing this transaction.

Respondent asserts that the mortgage was given on land which then had a value of between $11,000 and $12,000 and an actual assessed value of over $8,000; that the mortgagor, Nels Olson, at that time was considered to be worth about $80,000 net, and had large land holdings in Minnesota and North Dakota; that the investment was made for what he regarded as the best interests of the Palm children. He asserts further that the section of land securing said mortgage had previously secured a mortgage in the same amount to a different concern; that the adjoining half section had been taken as security for a $4,000 mortgage by a Fergus Falls banker; and that subsequently the John Hancock Life Insurance Company accepted a mortgage on the adjoining half section as security for a $4,000 loan. Respondent contends that, had it not been for the land depression of the late '20's and early '30's, the security would have amply repaid the loan. Respondent contends that he was not counsel for the guardian at that time, although the record would seem to indicate the contrary. The record is also clear that Elsie Palm was not advised of this investment at the time it was made, and was led to believe the funds were still on deposit in the Battle Lake bank.

The litigation with reference to the guardianship matter resulted in the account of the guardian, William A. Olson, being surcharged for the full $4,700, less $100 attorney's fees allowed respondent, and less one or two small additional payments made by the guardian.

The proceedings here relate directly to the sums of money received and expended by respondent in his various capacities, and also arise out of his actions as attorney and administrator in the estates described. While the litigation resulted in judgments against respondent, in a proceeding of this kind we are not compelled to accept the decisions rendered in the civil proceedings as *res judicata,* but may reëxamine the facts to determine whether there was misappropriation of funds, as well as to ascertain the

propriety of the conduct of the party involved. The question is not whether respondent is legally liable for the amount which he disbursed in violation of his authority as administrator, but whether he is guilty of conduct sufficient to require disbarment or discipline by this court. See, In Matter of Eldridge, 82 N. Y. 161, 37 Am. R. 558; In Matter of Joseph, 125 App. Div. 544, 109 N. Y. S. 1018; In Matter of Tanz, 233 App. Div. 300, 252 N. Y. S. 769.

Considered from this viewpoint, we have examined the voluminous records and exhibits involved. The length of time which has elapsed since the occurrence of the events and the loss of a number of records have made the problem extremely difficult.

The records available, the testimony of various witnesses, and the exhibits submitted indicate definitely that respondent in his capacity as special administrator of the August Palm estate received the following assets exclusive of the real estate:

RECEIPTS

| | |
|---|---|
| Proceeds of life insurance policy on August Palm | $2,021.52 |
| Proceeds on tornado insurance policy on homestead, August Palm estate | 2,000.00 |
| Warrant, Riverdale school district | 500.00 |
| Note, N. P. Westberg | 300.00 |
| Liberty bonds | 500.00 |
| Cash in bank | 2,213.01 |
| Cash on person | 4.02 |
| Automobile | 225.00 |
| Contractors' tools, equipment, and material | 1,400.00 |
| Book accounts | 100.00 |
| Personal property, rugs, fixtures, etc. | 10.00 |
| Interest on Westberg note | 52.25 |
| Interest on Liberty bonds | 86.16 |
| Interest on Riverdale school warrant | 52.50 |
| Interest on warrants received in Gackle school contract | 142.73 |
| Cash for rent | 4.00 |
| Tax refund | 32.50 |
| Interest on note | 6.00 |

| | |
|---|---|
| Interest on Mobratten | 6.55 |
| Received from Carl Palm | 1,648.00 |
| Gain on Gackle school contract (based on respondent's figures) | 1,673.79 |

| | |
|---|---|
| Total Receipts | $12,978.03 |

As an offset to the foregoing, respondent asserts that the following expenditures were made and charges incurred:

### DISBURSEMENTS

| | |
|---|---|
| Loss on sale of tools | $1,100.00 |
| Paid mortgage on Fergus Falls homestead | 1,549.25 |
| Paid guardian of minors | 861.82 |
| Used material included in gain on Gackle school contract (used in Fergus Falls dormitory) | 50.00 |
| Interest on $3,000 loan made by respondent as special administrator to assist in financing Fergus Falls contract. Principal subsequently repaid from the proceeds of the contract | 105.00 |
| Taxes paid on South Dakota property | 83.54 |
| Taxes paid on Fergus Falls property | 325.61 |
| Taxes paid on personal property | 18.74 |
| Premium on bond | 64.00 |
| Fergus Manufacturing Company claim | 61.00 |
| Costs and publication fees in probate matters | 17.50 |
| Appraiser's fee | 3.00 |
| Paid August Palm's notes to bank to procure release of collateral, including mortgage on South Dakota property[2] | 2,000.00 |

| | |
|---|---|
| | $6,239.46 |

[2]It is respondent's contention that August Palm owed $2,000 in notes to the Fergus Falls National Bank at the time of his death. This was in addition to the amount he owed on the mortgage on his homestead, $1,549.25. Respondent's statement is based on a financial statement of August Palm furnished a bonding company shortly before his death. The referee determined that only $1,106.24 had been paid by respondent on

| Loss on men's dormitory (originally claimed by respondent) | | $6,525.48 | |
|---|---|---|---|
| This included amount charged as paid to Wm. Schueller[3] | $1,760.22 | | |
| Testimony indicates that at most Schueller was paid only | 500.00 | | |
| Reducing loss by | $1,260.22 | 1,260.22 | |
| | | $5,265.26 | |
| Attorney's fees charged against contract, disallowed by court[4] | | 750.00 | |
| Adjusted loss on men's dormitory | | $4,515.26 | 4,515.26 |

Total charges and disbursements before attorney's fees  $10,754.72

The foregoing figures indicate that at the time of the completion of the contracts respondent had on hand $2,223.31. Of this sum he claims $1,260.22 was payable to William Schueller, leaving a balance of approximately $1,000 available for attorney's fees. Respondent has testified that his attorney's fees in connection with

notes. Because the evidence is conflicting, for the purpose of this proceeding we are giving respondent credit for $2,000 as claimed by him, although the evidence strongly supports the referee's finding on this item.

[3]Subsequently respondent, as attorney, brought action on behalf of Schueller against Elsie Palm as general administrator of the estate of August Palm, for $1,281.83 on this same item, indicating this was the balance due Schueller thereon. See, Schueller v. Palm, 218 Minn. 469, 16 N. W. (2d) 773. Many conflicting statements have been made thereon. Giving respondent the benefit of a grave doubt, it would appear that the $1,760.22 should be disallowed in computing the dormitory contract and that respondent should be permitted credit only for the $500 payment he claims he made to Schueller. This would reduce respondent's claim of loss on the contract by $1,260.22.

[4]Loss likewise included $950 claimed by respondent for attorney's fees and expenses. The court disallowed $750 attorney's fees but permitted a charge for $200 expense. The loss, therefore, is further reduced by $750.

the proceedings involved were reasonably worth the sum of $2,500. The court allowed $500 plus $97 general expenses, leaving respondent accountable for $1,626.31, which was never paid. Insofar as Schueller's balance of $1,260.22 is concerned, Schueller and respondent both testified that respondent cancelled $750 of attorney's fees owing him from Schueller and gave the latter his note for $500. The evidence does not indicate whether the note was ever paid. Presumably it was not, and Schueller's suit to collect the full balance casts grave doubt on the testimony relative to cancellation of attorney's fees.

■ There is substantial controversy on the item of $1,648 which respondent asserts was paid on notes of August Palm, secured by collateral, including a South Dakota mortgage of $1,000 made by him on land he owned there prior to his death. It is respondent's contention that August Palm owed $2,000 to the Fergus Falls National Bank on notes in addition to the amount owing on his homestead mortgage. The bank presented testimony, including the bank's records, which indicated that August Palm owed only $1,000, plus interest, at the time of his death (besides the mortgage). Respondent presented documentary evidence consisting of financial statements signed by August Palm a few weeks before his death which indicated that he may have owed the bank $2,000 on notes (besides the homestead mortgage) and that $1,000 thereof was secured by a mortgage on his South Dakota property.

In October 1920, respondent drew a draft on Carl Palm, brother of decedent, for $1,648.44. This was honored by Carl Palm, deposited in respondent's account as special administrator in the Fergus Falls National Bank, and withdrawn therefrom on the same date. Respondent asserts that the money did not come into his hands but was applied by the bank on August Palm's notes. The evidence is very much in conflict and very doubtful on this point. There is no evidence to indicate that the money came into respondent's hands and was misappropriated by him. There is some evidence to indicate that August Palm may have owed notes for $2,000, and contrary evidence to indicate that he may have

owed only $1,000. Because of this conflict, we have given respondent the benefit of the doubt on this item, and for the purpose of these proceedings have assumed that he was obligated to pay $2,000 on decedent's notes and that the item of $1,648.44 made up a part of this amount.

The referee in his findings indicated that a total of $1,106.24 rather than $2,000 or $1,648.44 was actually paid; and, in justice to the referee, the evidence submitted would seem amply to sustain his finding in this respect. It is only because of the possibility that lost records, receipts, and correspondence may have more fully explained this expenditure that we have given respondent credit for the $2,000 claimed by him.

■ Petitioner disputes payment by respondent of the sum of $861.82 which he shows in his final account as being paid to William Olson, guardian of the minor Palm children. Respondent presented records of the bank, including bank deposit slips, which indicated that this sum had been paid and receipted for by the guardian. The guardian in his final account likewise indicated that he had received this sum from respondent, and we hold under such circumstances that this disbursement is reasonably sustained by the evidence.

■ There is substantial conflict with reference to the charge of $1,760.22 made by respondent in the men's dormitory contract for money he asserts was advanced by him to William Schueller in payment of the balance due Schueller on said contract. Respondent first testified that he advanced $300 in cash to Schueller, cancelled $750 worth of attorney's fees owed him by Schueller, and gave Schueller a note of $500 for the balance; that upon receipt of these items Schueller gave him a release in full of this claim; and that the estate accordingly was indebted to respondent for the full $1,760.22. Subsequently, he testified that he actually had paid Schueller $500 in cash and that the $750 in attorney's fees was not cancelled until long after the final account. No evidence is disclosed as to what became of the note, although the estate was charged therefor. Subsequently, he appeared as attorney for

Schueller in a suit against Elsie Palm as general administrator of the estate of August Palm, wherein Schueller sought to collect $1,281.83 arising out of this same item. In Schueller's testimony in district court, he stated that he had actually received from respondent the sum of $500 in cash, and, for the reasons indicated, this is the maximum we are authorizing as a deduction for payment by respondent. It may be further stated that there is grave doubt as to whether the amount paid was $300 or $500, the testimony being in conflict thereon.

■ There are many items of misconduct charged against respondent in the handling of these various estates. Briefly summarized, in addition to the foregoing, the evidence would seem to sustain the following:

1. That respondent failed to file an inventory in the estate of August Palm for almost two years after he was appointed special administrator.

2. That, while he filed his final account as special administrator on June 19, 1923, he did nothing to procure a hearing thereon or to procure his discharge and release as special administrator, and the matter was permitted to rest until July 27, 1937, when objections and exceptions to the account were filed by the Palm children through their attorney, William P. Harrison.

3. That respondent failed to include the item of $1,648.44 either in his original final account or his amended final account.

4. That the amended final account did not properly show disbursements of items subsequently claimed to have been disbursed by respondent, and included many errors which respondent was primarily responsible for.

5. That the original final account indicated a disbursement of $2,000 in satisfaction of a mortgage, when actually only $1,549.25 was paid therefor. The balance of the $2,000, however, was actually left in the administrator's account and expended for estate purposes.

6. That respondent was careless and negligent in permitting the loss of his vouchers, receipts, and other documents and in failing to file the same at the time of filing his final account.

7. That respondent, while still attorney of record in the guardianship matter, appeared as attorney for the guardian in handling funds belonging to the latter; and, as attorney for Nels Olson, father of the guardian, in investing the same funds in a mortgage given by said Nels Olson; and thereafter, as attorney for said guardian, in filing an inventory listing the assets of the estate as $4,700 in cash when the aforesaid $4,000 at that time had been invested in a mortgage on North Dakota real estate; and thereafter in failing to advise the probate court of such investment.

8. That when the heirs of August Palm sought information or an accounting they were met with evasions and dilatory tactics, and when actions were finally instituted to bring the matters involved before the court respondent resorted to various devices and legal technicalities to delay proceedings and to evade the effect of any claims or judgments against him, and sought to intimidate Elsie Palm by various letters and telegrams wherein he threatened suit against the estate if she did not recognize certain errors claimed by respondent; that said communications were addressed directly to her, although respondent knew at that time that she was appearing through her attorney, William P. Harrison.

9. That respondent was involved in other instances of misconduct, including interposition of pleadings, which were stricken by the court as sham and frivolous; the serving of motion papers containing long, involved affidavits reciting facts already in evidence and already determined adversely to respondent; in seeking to vacate judgments after they had become final under the laws of the state; in otherwise seeking by various devices to delay his accounting and the settlement of his responsibilities in the matters involved.

The evidence discloses that at the time the two building contracts were completed respondent had on hand the sum of $2,223.31. While a portion of this may have been payable to William Schueller,

the evidence is fairly definite that no part of the same was paid to Schueller beyond the sum of either $300 or $500 which Schueller subsequently asserted was paid to him thereon. This would leave at least the sum of $1,723.31 in the hands of respondent, which sum, less the attorney's fees allowed by the court, properly belonged to his clients. The allowance of the court—to wit, $500 for attorney's fees and $97 for general expenses, left respondent accountable for a substantial sum of money which was never paid over by him to his clients. This money did not belong to him and, subsequent to the time the court fixed his attorney's fees, should have been promptly remitted. The retention of this sum by respondent, his failure to account therefor to his clients, and in fact his actions in filing accounts which in effect concealed the sum retained constitute serious violations of the ethics of the legal profession and a breach of the trust imposed upon respondent not only by the canons thereof, but by virtue of the contract entered into between respondent and his clients. The fact that some of said clients were minors incapable of safeguarding their interests aggravated the offense.

For the foregoing reasons, we conclude that respondent, Leonard Eriksson, is guilty of misconduct as an attorney at law, and it is ordered that he be disbarred as an attorney at law of this state.